NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0443n.06

No. 18-5781

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 22, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HEALTHCARE COMPANY LTD.. | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| UPWARD MOBILITY, INC. dba Bed Boss. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | |

BEFORE:     **BOGGS, BATCHELDER, and BUSH, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge**.   Healthcare Co. Ltd. ("Healthcare Co.") appeals the district court's decision in a breach of contract case to abstain under the *Colorado River* [1] doctrine until the conclusion of related state court proceedings. Healthcare Co. argues the federal case is not parallel to the state case and that, even if the cases are parallel, a balancing of the *Colorado River* factors weighs against abstention. We disagree and affirm the district court.

**I.**

At some point prior to 2009, Ben Folkins and his wife, Andrea, founded Upward Mobility, a mattress distributorship in Chattanooga, Tennessee, that did business under the name "The Bed Boss." Upward Mobility's mattresses were manufactured by Healthcare Co., a Chinese company. While producing mattresses for Upward Mobility, Healthcare Co. simultaneously manufactured

---

[1] The abstention doctrine derives from the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

and marketed mattresses under its own label, MLILY, in various countries. In 2011, Zhanggen Ni, the President and Chief Executive Officer of Healthcare Co., approached Ben Folkins to request his assistance in marketing MLILY-branded bedding in the United States. Folkins and Ni created a new partnership, China Beds Direct (CBD), to be the exclusive distributor of MLILY products in the United States to companies that owned or distributed to fewer than twenty storefronts. Folkins owned 45% of CBD, and Healthcare Group owned 55%.[2] Folkins was named President and Chief Operating Officer of CBD, and Ni was named its Vice-President and Chief Executive Officer.

Over the ensuing years, Folkins and Ni frequently disagreed and accused each other of violating the partnership's terms. On December 8, 2016, Folkins told Ni that he intended to withdraw as a member of CBD effective September 31, 2017. Pursuant to the CBD Operating Agreement, Folkins requested a $3,122,500 buyout, which Healthcare Co. refused, countering instead with a $1,080,000 buyout offer. Folkins refused the counteroffer, and the relationship between Folkins and Healthcare Co. continued to deteriorate.

At some point during 2016, while the dispute between them brewed, Folkins ordered six containers of mattresses from Healthcare Co. for Upward Mobility. The containers were shipped and delivered. Prior to payment's coming due on those six containers, Folkins ordered three more containers of mattresses. Healthcare Co. shipped the containers, but before they were delivered to Upward Mobility, payment for the six containers came due and Folkins refused to pay. Healthcare Co. responded by diverting the three containers. Folkins struck back on March 17, 2017, by filing a complaint in the Chancery Court for Hamilton County, Tennessee, against Healthcare Co., Healthcare Group, and Ni. Folkins's complaint covered much more than the dispute about the

---

[2] Healthcare Group is a wholly-owned subsidiary of Healthcare Co. and is registered to do business in Tennessee.

nine containers of mattresses.  The complaint covered all the disagreements between Folkins and his Chinese counterparts over CBD and contained nine counts: unjust enrichment, breach of fiduciary duties, intentional interference with business relationships, procurement of breach of contract, conversion, defamation, declaratory judgment, and two counts of breach of contract.  The count of conversion related specifically to the dispute between Folkins and Healthcare Co. over the nine containers of mattresses.

Approximately six months after Folkins filed his state-court complaint, Healthcare Co. filed a federal claim for breach of contract regarding only the nine containers of mattresses. Healthcare Co. and Upward Mobility partially settled as to the first six containers, leaving only the dispute about the three remaining containers and miscellaneous costs related to the six containers.  Healthcare Co. refuses to deliver the three containers because it claims Upward Mobility still owes unspecified "costs" for Upward Mobility's "breach of payment on the containers already delivered" as well as "storage and handling fee[s]" for the three containers "in excess of $79,067.35," exclusive of interest.  Healthcare Co. claims that it "has financial concerns that if it delivers the three containers to the Defendant, who has breached payment on previous containers, it will be difficult to collect the debt owed to the Plaintiff."  However, Healthcare Co. promises to "deliver the three containers to Defendant" upon full payment for the three containers and all outstanding costs.

Upward Mobility moved to dismiss Healthcare Co.'s federal claim pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6), or, in the alternative, for a stay under the *Colorado River* abstention doctrine.  The district court declined to decide the motion to dismiss but granted the stay. Healthcare Co. appeals only the stay.  Upward Mobility argues that the state and federal proceedings are parallel proceedings and the enumerated *Colorado River* factors weigh

in favor of the district court's declining to exercise jurisdiction until the completion of the state proceeding. We agree.

## II.

We must determine first whether we have jurisdiction to decide this appeal. Federal courts of appeals have jurisdiction over "final decisions of the district courts of the United States." 28 U.S.C. § 1291. Both parties assume that the district court's decision to abstain was a final decision, but we have found previously that not all abstention decisions are final, appealable orders. *See, e.g., Clark v. Adams,* 300 F. App'x 344, 351 (6th Cir. 2008) (holding that abstention under the *Younger* abstention doctrine was not a final, appealable order because the district court's decision to abstain did not put the plaintiffs "effectively out of court").

A district court's decision to abstain is a final decision if "there [will] be no further litigation in the federal forum" because "the state court's judgment on the issue [will] be res judicata." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983). Thus, in *Clark*, where we determined there were four issues for the district court to decide after the state proceeding concluded, we held the district court's decision to abstain was not a final, appealable order because "there [were] clearly issues that remain to be decided by the federal court after resolution of the state court case." 300 F. App'x at 348, 351. Conversely, in *RSM Richter, Inc. v. Behr Am., Inc.*, we held that the district court's abstention decision was appealable because after the state court proceedings there would be nothing left for the district court to decide—abstaining was "the practical equivalent of an order dismissing the case." 729 F.3d 553, 557 (6th Cir. 2013) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713 (1996)).

The district court's order leaves open the possibility that some litigation could continue in federal court after the state proceeding has concluded. RE 62 at 512 ("Upon resolution of the State

Court Case . . . the parties shall jointly submit a report to the Court indicating the status of the State Court Case, and . . . whether either party believes there are any remaining issues for this Court to address.") But the only issue in the federal case—breach of contract—is part-and-parcel of one of the claims before the state court—Upward Mobility's claim of conversion for the containers of mattresses. In Tennessee, "[t]he elements of a conversion claim include: (1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion over the chattel alleged to have been converted; and (3) defiance of the true owner's rights to the chattel." *White v. Empire Express, Inc.*, 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012). In making determinations regarding elements (1) and (3), the state court will have to adjudicate the contract dispute. Because the state court's decision on the contract will be res judicata in the federal case, the district court's decision to abstain puts Healthcare Co. "effectively out of [federal] court," and therefore we have jurisdiction to consider its appeal. *Moses H. Cone*, 460 U.S. at 10.

### III.

The *Colorado River* abstention doctrine is premised on "considerations of judicial economy and federal-state comity." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). The doctrine recognizes that although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them, considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). A *Colorado River* analysis has two steps. First, we must determine whether the state and federal proceedings are parallel. *Id.* If they are not parallel, the district court should not abstain. If they are parallel, we weigh the eight *Colorado River* factors to determine whether abstention is merited. *Id.* at 340–41.

We review de novo the district court's determination that the proceedings are parallel. *Heitmanis v. Austin*, 899 F.2d 521, 527 (6th Cir. 1990). Healthcare Co. argues that the district court erred in three ways: (1) the state court and federal court proceedings involve different legal theories for recovery; (2) the court should look only at claims that were made, not claims that might have been made; and (3) the parties in the two proceedings are not identical. We address these objections in turn.

*The state and federal proceedings involve different legal theories for recovery*. Healthcare Co. cites *Baskin v. Bath Twp. Bd. of Zoning Appeals* for the proposition that when "two actions arise out of the same basic facts, but they each contest a different aspect of" the disputed issue and each party seeks "different relief," the actions are not parallel. 15 F.3d 569, 572 (6th Cir. 1994). Healthcare Co. argues that conversion and breach of contract are separate causes of action and cites several Tennessee court cases that have distinguished between contractual and tort liability. Thus, Healthcare Co. asserts that the district court erred in holding that a final decision on conversion in the state court would decide the breach of contract issue in the federal action.

Healthcare Co. is wrong. Parallelism does not require identical causes of action in the state and federal lawsuits. In *Romine*, for example, four class-action lawsuits were filed—two at the state level, and two at the federal level. 160 F.3d at 338–39. The two federal cases were filed in the same district court, and the court consolidated the federal cases and stayed them pending resolution of the state proceedings. *Id.* at 339. In affirming the district court, we acknowledged that the "state action [was] . . . more comprehensive than the consolidated federal cases." *Id.* at 340. But we went on to state that "exact parallelism is not required; [i]t is enough if the two proceedings are substantially similar." *Id.* at 340 (quotation marks omitted). We concluded that where the federal claims were "predicated on the same allegations as to the same material

facts . . . the actions must be considered 'parallel' for the purposes of the *Colorado River* abstention doctrine." *Id.*

Applying this principle to *Baskin,* the case that Healthcare Co. relies on, it is easy to see why the result was different. Baskin applied for a zoning variance for five amateur-radio towers and antennae. 15 F.3d at 570. He received the variance but was then sued in state court by a group of local homeowners opposing the variance. *Id.* Baskin intervened in the state proceeding to defend the variance. *Id.* Simultaneously, he filed a federal lawsuit claiming that the Board of Zoning Appeals "failed to reasonably accommodate his use of his FCC amateur radio operator's license and violated his federal constitutional rights to equal protection and substantive due process." *Id.* In the state action, Baskin was *defending* the variance as not overly excessive; in the federal action, Baskin was *attacking* the variance as too restrictive. The district court abstained, and Baskin appealed. We reversed, noting that although the two lawsuits arose "out of the same basic facts . . . they each contest[ed] a different aspect of the variance granted by the Township zoning board and they [sought] different relief." *Id.* at 572.

The instant case is similar to *Romine*, not *Baskin*. The state lawsuit is broader, but just as in *Romine*, the proceedings are nevertheless "substantially similar." *Romine*, 160 F.3d at 340. As discussed in Part II *supra*, adjudication of Upward Mobility's conversion claim will require determination of issues dispositive of Healthcare Co.'s breach of contract claim. The proceedings in both courts are therefore "predicated on the same allegations as to the same material facts;" that the two parties pursue separate legal theories is of no consequence. *Id.*

*Only actual claims, not theoretical claims, count in a parallelism analysis.* Healthcare Co. again cites *Baskin*, this time for the proposition that, "in deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues

actually raised in the state court action, not those that might have been raised." 15 F.3d at 572. Healthcare Co. admits that it could have brought a counterclaim for breach of contract in the state action but did not do so. Healthcare Co. appears to be arguing that the lawsuits would have been parallel if it had brought a breach of contract counterclaim in state court, but because it did not, the lawsuits are not parallel. Healthcare Co. is correct that *Baskin* says we may examine only claims that were made, not claims that might have been made. But as our prior analysis shows, here we do not need to examine claims that might have been made to determine that the two proceedings are substantially similar. This argument fails.

*The parties in the two proceedings are not identical.* Healthcare Co. does not cite any cases for its argument that if the parties in two actions are not identical, the actions are not parallel. And for good reason: we have never held that identity of parties is required for parallelism. In fact, we have held the opposite. *See, e.g., Preferred Care of Delaware, Inc. v. VanArsdale,* 676 F. App'x 388, 394 (6th Cir. 2017) ("Even if, as [Appellant] argues, the state suit includes parties . . . beyond those in the federal suit, this court has nonetheless held that such [a] difference[] will not upset an otherwise substantial symmetry between a federal and state action."). Here, Healthcare Co. and Upward Mobility are each parties in both the federal and state proceedings. That is enough for "substantial symmetry." *Id.* "If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties." quoting *Romine*, 160 F.3d at 340 (quoting *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir.1985)).

We hold that the state and federal proceedings are parallel.

**IV.**

Because the proceedings are parallel, we proceed to step two of the analysis and consider

the eight *Colorado River* factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation . . . (4) the order in which jurisdiction was obtained. . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Romine*, 160 F.3d at 340–41 (citations omitted). These factors do not constitute "a mechanical

checklist." *Moses H. Cone*, 460 U.S. at 16. Rather, courts should "careful[ly] balanc[e] . . . the

important factors as they apply in a given case, with the balance heavily weighted in favor of the

exercise of jurisdiction." *Id.*

The first, second, and seventh factors weigh against abstention. Regarding the first factor,

neither court has assumed jurisdiction over any res or property; regarding the second factor, the

state and federal courts are less than a mile apart. *See Bates v. Van Buren Twp*., 122 F. App'x 803,

807 (6th Cir. 2004) (holding that when no res was involved and "there is no reason to think the

federal forum is less convenient," the factors weigh against abstention). The seventh factor weighs

against abstention but, as the district court noted, "only slightly" because "[b]oth cases appear to

be in their early stages." The edge goes to the federal proceeding because the parties have already

settled as to six containers, for $241,690.00. No settlement has occurred in the state proceeding.

However, as neither case has yet proceeded to discovery, the district court was correct to find that

both cases are in their early stages, and the weight against abstention is therefore very light.

The remaining factors weigh in favor of abstention. Regarding the third factor, the state

court will necessarily address whether there was a breach of contract in its determination of the

conversion claim because adjudication of a conversion claim requires the court to identify to whom the property belongs. If both actions were permitted to go forward, two courts would be adjudicating the same legal issue—the classic piecemeal litigation situation. *See Cass River Farms, LLC v. Hausbeck Pickle Co*., 2016 WL 5930493, at *6 (E.D. Mich. Oct. 12, 2016) ("If the Court were to exercise jurisdiction, the contracts between the parties would be interpreted twice and potentially in contradictory ways. That result would not only waste of judicial resources, but it would also harm the legitimacy of the court system." (quoting *Romine*, 160 F.3d at 341).

The fourth factor weighs in favor of abstention because the state suit was filed six months prior to the filing of the federal case**;** *Bates*, 122 F. App'x at 807. The fifth factor weighs in favor of abstention because Tennessee law would govern the breach of contract claim. *Id.* The sixth factor weighs in favor of abstention because, despite Healthcare Co.'s arguments to the contrary, there is no legitimate reason the state court is not adequate to adjudicate the dispute. Healthcare Co. argues that "the state court proceeding involves many issues and many parties that may confuse the jury if it goes to trial," but complex litigation does not render a state court inadequate to hear a dispute. Finally, the eighth factor weighs in favor of abstention because there is no exclusive federal jurisdiction over the breach of contract at issue in the federal case. *VanArsdale*, 676 F. App'x at 397 ("[T]he presence of concurrent jurisdiction . . . counsels in favor of abstention.").

In conclusion, three factors weigh against abstention, and five factors weigh in favor of abstention. The weight of the factors is in favor of abstention, and we therefore hold the district court did not err in deciding to abstain. In so holding, we recognize that abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813. We nevertheless find abstention warranted because the driving principle of *Colorado River* abstention is "[w]ise judicial administration,

giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)).  Where, as here, the only issue in the federal litigation will be decided by a state proceeding that was filed first, is governed by state law, and is at least as far along as the federal proceeding, to hold otherwise would contravene the spirit of the *Colorado River* doctrine.

## V.

For the foregoing reasons, we **AFFIRM** the decision of the district court.